———————

ROBERT LARA,

        Plaintiff,

v.                                No. CIV 95-366 BB/LCS

CITY OF ALBUQUERQUE and
LAWRENCE RAEL,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the parties' cross-motions for summary judgment (Docs. 56 and 61). Having considered the submissions of the parties and the applicable law, the Court determines that Plaintiff's motion should be DENIED, Defendants' ("the City") motion should be GRANTED as to the procedural-due-process claim, and Plaintiff's state-law breach-of-contract claim should be DISMISSED without prejudice.

### Facts and Procedural History

Plaintiff was employed by the City of Albuquerque. While so employed, he voluntarily sought help from the the City's Employee Assistance Program ("EAP") and received counseling. In August 1994, his counselor ordered him to report for a drug test, and he failed to do so. After the City held a pre-termination hearing, his employment with the City was terminated because of his failure to undergo the drug test.

Plaintiff filed a grievance in accordance with the City's personnel policies. He was represented by counsel during the grievance process, which was presided over by a hearing officer.

While the grievance was pending, the City filed a motion to force Plaintiff to provide a limited waiver of his psychotherapist-patient privilege so that it might obtain a copy of the EAP agreement Plaintiff had signed. According to the City, this agreement required Plaintiff to report for drug tests, on penalty of termination should he refuse to comply with such a request from his counselor. The City wanted a copy of the agreement produced so that it could prove the elements of its disciplinary action. Plaintiff refused to produce the requested document or sign a waiver of his psychotherapist-patient privilege. Plaintiff also refused to agree to the City's alternative suggestion, that he stipulate to the contents of the EAP agreement. The hearing officer ordered Plaintiff to sign the limited waiver of his privilege, and warned Plaintiff he would recommend dismissal of Plaintiff's grievance if Plaintiff refused to comply. Plaintiff did not comply with the order.

Pursuant to the grievance procedures established by the City, the hearing officer submitted a recommendation to the Personnel Board, recommending Plaintiff's grievance be dismissed. The Board's rules do not provide for submission of additional facts, argument, or authority, and Plaintiff was not allowed to argue against the recommendation. When the Board met to consider Plaintiff's case, however, the Board did not immediately make a decision. Instead, the Board decided to request a legal opinion from the Assistant City Attorney, Mr. Winter, who at that time acted as legal counsel to the Board. The Board requested an opinion as to whether the right to discovery outweighs a patient's psychotherapist-patient privilege. At some point after the Board's meeting, Winter submitted a letter to the Board, presumably adverse to Plaintiff's position, although neither Plaintiff nor this Court has had access to the letter to confirm this. After the Board received Winter's opinion there was a unanimous vote to uphold the hearing officer's recommendation and dismiss Plaintiff's grievance.

Following the Board's decision, Plaintiff filed the instant lawsuit in state court, claiming violations of procedural due process and the Fourth Amendment, and raising other claims. Due to the presence of the federal claims, the City removed the case to this Court. On the same day the removal petition was filed, Plaintiff filed (again in state court) a pleading styled an appeal or, in the alternative, a petition for writ of certiorari, challenging the Board's decision. After some procedural maneuvering in federal court the latter action was left to be litigated in state court, while this case proceeded at the federal level. This Court initially decided to abstain from hearing Plaintiff's case while the state-court action was still pending. However, following an appeal to the Tenth Circuit and a remand so this Court could enter findings supporting abstention, this Court has instead allowed Plaintiff's lawsuit to proceed. In the meantime, Plaintiff's state-court action was decided adversely to Plaintiff at the state district court level, and is now pending in the New Mexico Court of Appeals.

The procedural status of this case, therefore, is as follows: (1) Plaintiff has pursued his state-court remedies, raising the same objections to the Personnel Board's decision as he is raising in this case, through the district court level and to the appellate level, and awaits a decision that could reverse the Board's action; (2) Plaintiff has also continued to litigate this case in federal court, purportedly challenging the merits of the underlying basis for his termination (the drug test requirement) as well as the actions of the hearing officer and the Board. Plaintiff's pending motion for summary judgment maintains he is entitled to summary judgment on his state-law breach-of-contract claim as well as his Section 1983 procedural-due-process claim. The City, in turn, also requests summary judgment in its favor on both of those issues.[1]

---

[1]It is not clear what claims will remain viable in this case after the due-process and contract claims are resolved by this opinion. The Magistrate assigned to the case has determined that a status conference should be held to decide that question.

**Standard to be Applied**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider the parties' motions in light of these standards.

**Procedural Due Process Claim**

Plaintiff's claim is summarized simply. He maintains he had a right to a post-termination hearing, and was deprived of that right by the hearing officer's insistence that he allow the City access to his EAP agreement. He also maintains the hearing officer's (and Board's) choice of the harsh sanction of dismissal of the grievance, as a sanction for his refusal to comply with the officer's discovery order, violated due process. Finally, he contends the confidential communication between Winter and the Board, which Plaintiff characterizes as *ex parte* communication between a party and the Board, also violated his right to due process. The Court disagrees with Plaintiff's argument, for several reasons. First, Plaintiff had available, and exercised, a right to obtain state-court judicial

review of the procedures and decision of the Board, and his right to procedural due process has thus been satisfied. Second, neither the dismissal of Plaintiff's grievance (following his willful refusal to comply with a discovery order) nor Winter's legal advice to the Board was a violation of due process, even disregarding the existence of subsequent corrective opportunities in state court and even if the discovery order was erroneously issued. Third, the hearing officer's discovery order, requiring production of the EAP agreement in the face of Plaintiff's claim of privilege, was correct on the merits.

**Plaintiff has received all the process he was due:** As can be seen from the Court's initial decision to abstain from hearing this case, the existence of the state-court action challenging the Board's decision, on grounds similar to those raised in this case, has always been a troublesome aspect of the case. It seems anomalous to allow Plaintiff to claim a violation of due process for the dismissal of his grievance, when he has set in motion state-court proceedings that ultimately could correct any violation of his due process rights that might have occurred. That is, Plaintiff could end up obtaining the post-termination hearing he desires, if the state Court of Appeals rules in his favor. The Court recognizes that exhaustion of remedies is not required prior to filing a Section 1983 claim, and the pendency of Plaintiff's appeal in state court therefore does not bar Plaintiff's federal-court action. However, there is a persuasive line of cases indicating the availability of state-court review of an administrative agency's action is highly relevant to the question of whether a due process violation has occurred. In other words, Plaintiff may not have been required to exhaust his state-court remedies before he filed his civil-rights lawsuit, but the fact those remedies are available could, depending on the circumstances, render his procedural-due-process claim non-viable. See, e.g., Collyer v. Darling, 98 F.3d 211, 227 (6th Cir. 1996) (availability of adequate review procedures in

state court was fatal to government employee's procedural-due-process claim); <u>McKinney v. Pate</u>, 20 F.3d 1550, 1564-65 (11th Cir. 1994) (no claim is cognizable under Section 1983 unless and until the state refuses to make available a means to remedy the alleged procedural deprivation; where Florida courts have power to remedy deficiency in administrative process, no due-process violation occurred); <u>Cohen v. City of Philadelphia</u>, 736 F.2d 81, 86 (1984)(employment case holding that mistakes made by administrative bodies in applying local ordinances do not create a federal due-process claim so long as correction is available by state's judiciary);  <u>but see</u> <u>Clements v. Airport Authority of Washoe County</u>, 69 F.3d 321 (9th Cir. 1995) (rejecting idea that availability of post-deprivation correction in state court can cure a procedural-due-process violation occurring during the administrative process).

To the Court's knowledge, the Tenth Circuit has not explicitly adopted this line of reasoning, although in a recent opinion the Circuit has indicated receptivity to the rationale of <u>Collyer</u> and <u>McKinney</u>.  In <u>Tonkovich v. Kansas Bd. of Regents</u>, ___ F.3d ___, 1998 WL 743693 (10th Cir.), the Circuit held that while exhaustion is not a prerequisite to a Section 1983 claim, the fact that a terminated university professor had the opportunity for additional post-termination hearings, including state-court judicial review, is germane to the inquiry into what process the state afforded the professor.  The Circuit ultimately concluded that because the professor received an adequate pre-termination hearing, and had available various post-termination proceedings including the possibility of judicial review, there was no due-process violation.  <u>See also</u> <u>Atencio v. Bd. of Educ. of Penasco Independent School Dist.</u>, 658 F.2d 774, 779 (10th Cir. 1981) (where hearings are available before administrative agency as well as state court of appeals, no federal constitutional violation has occurred simply because discharge may not have been in compliance with state law).  The Court finds

the Collyer and McKinney line of cases persuasive, and believes the Tenth Circuit would adopt it, given the Circuit's Tonkovich and Atencio opinions.

Practicality and federalism also augur in favor of permitting the state court to have an opportunity to remedy state administrative deficiencies. If the federal court does not consider the availability of state judicial remedies, a state will have no opportunity to correct a procedural problem, *via* judicial review, before a discharged employee is allowed to immediately jump to federal court with a Section 1983 lawsuit. Even serious procedural irregularities are amenable to subsequent full and complete correction by a court, given the availability of remedies such as back pay and reinstatement. In this case, Plaintiff had an opportunity to have the Personnel Board's decision reviewed by the state district court, and lost. He is now having that decision reviewed on appeal, and all indications are his claims are receiving full and fair review in the judicial process. The Court therefore holds he has received all the process he is due.[2]

_____

[2]It is important to point out that Plaintiff received a pre-termination hearing as well as having access to the post-termination grievance process. A number of courts have rejected the idea that, in the employment-termination context, a deprivation of the right to a pre-termination hearing may be adequately corrected through later judicial review. The Tenth Circuit has adopted this position in at least one opinion, albeit unpublished. Urban v. Tularosa, 1998 WL 694465 (pre-termination hearing required, despite availability of post-deprivation remedies, because termination of employee was not random, unauthorized, or unpredictable event). The generally accepted rule appears to be that the availability of subsequent judicial proceedings is irrelevant to the existence of a procedural-due-process claim if the problem is the lack of a pre-termination hearing; however, procedural difficulties occurring during the post-termination hearing process may be corrected in subsequent judicial proceedings. There appear to be at least two justifications for such a distinction. First, the complete deprivation of a pre-termination hearing often has more significant impact on an employee than problems occurring during the post-termination process, for a number of different reasons. These reasons include the significant fact that the chances of avoiding an adverse employment decision in the first place, by contesting the proposed discipline before it is imposed, are often greater than obtaining reversal of a disciplinary decision once the action has been taken. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543-45 (1985) (discussing importance of pre-termination hearing). Second, where the claimed defect in procedure is an attack on the post-termination process, it is only fair to consider the entire process, including any judicial review that may be provided, rather

**The hearing officer's and Winter's actions were not violative of due process:** Due process is not violated when a case is dismissed for discovery violations, as long as the violation in question was willful. Myles v. Sapta, 1998 WL 45494 (10th Cir.). "Willful" means a voluntary, intentional refusal to comply with a discovery order. Id. Plaintiff's refusal to comply with the hearing officer's order was clearly willful; he directly refused to comply with the order, even after being warned of the possible consequences of such refusal. Plaintiff's counsel expressly acknowledged that Plaintiff's defiance of the order was willful. Even if the hearing officer's order was wrong on the merits, Plaintiff was not free to defy the order with impunity. This is not a case where Plaintiff had no reasonable alternative other than to refuse to comply with the order. He could have challenged the order through a mandamus action in state district court, thus obtaining immediate judicial review of the validity of the order. He also could have avoided most or all of the intrusion on his privacy by agreeing to one of the alternative courses of action proposed by the City, such as a stipulation concerning the contents of his EAP agreement. Instead, he chose to follow the route he has taken in this case -- defy the order, suffer the consequences, and then attempt to obtain reversal of the order and its consequences on appeal. The Court holds no due-process violation occurred when Plaintiff's grievance was dismissed on the basis of his obdurate refusal to comply with the hearing officer's order.

Similarly, Plaintiff's arguments concerning Winter's confidential legal advice to the Board are not meritorious. Plaintiff portrays Winter's conduct as *ex parte* communication between a party and the decisionmaking body. Plaintiff relies on the fact Winter was employed by the City Attorney's office, and the City was a party to the grievance. However, the law is clear that an attorney or

than examining only one stage of the administrative process.

employee of an agency may advise or assist the decisionmaking arm of that agency, as long as the attorney or employee has not played a part in investigating or prosecuting the matter at hand. See, e.g., Sheldon v. S.E.C., 45 F.3d 1515, 1518-19 (11th Cir. 1995) (it is not unconstitutional to have agency combine functions of prosecutor, judge, and jury, as long as no employees serve dual roles); 5 U.S.C. § 554(d) (employee or agent performing investigative or prosecuting functions for an agency in a particular case may not participate or advise in the decision of that case).

There is no indication in this case that Winter acted as investigator or prosecutor in Plaintiff's grievance. Instead, the City Attorney has submitted an affidavit indicating the division of the City Attorney's office for which Winter works is separate from the division that prosecutes or defends employee grievances. See People v. Brown, 770 P.2d 1373, 1376 (Colo. App. 1989) (holding similar separation of duties and responsibilities in state attorney general's office satisfied requirements of due process). Had the confidential communication to the Board come from the assistant city attorney representing the City in the grievance, Plaintiff's argument would have merit. However, since the communication was from a city attorney acting as legal counsel to the Board, who had no part in representing the City, Plaintiff's characterization of it as *ex parte* communication from a party is erroneous.[3]

**The hearing officer's order was not erroneous:** The final and independent reason no due-process violation occurred in this case, at least with respect to the discovery order, is that the hearing officer's order overriding Plaintiff's claim of privilege was correct. Plaintiff claimed his agreement

---

[3]The Court notes Plaintiff may have raised other challenges to the confidential legal advice, under state law. To the extent such issues are present concerning the communication, they have not been briefed and are not addressed in this opinion. The Court decides only that Winter's legal advice to the Board, in response to a request for such advice, did not violate Plaintiff's due-process right.

with the EAP was protected by psychotherapist-patient confidentiality. The agreement, however, at least the portion relevant to the City's case, appears to contain nothing substantive concerning Plaintiff's treatment or counseling sessions. The psychotherapist-patient privilege protects confidential communications made during the course of therapy sessions. See, e.g., Jaffee v. Redmond, 518 U.S. 1 (1996) (recognizing federal psychotherapist-patient privilege; discussing need for frank and complete disclosure of the facts during psychotherapy; holding that "confidential communications" in the "course of diagnosis or treatment" are protected from compelled disclosure); SCRA 1998, 11-504(B) (New Mexico evidentiary rule establishing privilege; patient has privilege to refuse to disclose communications made for the purposes of diagnosis or treatment). The contents of the agreement, at least as far as the Court can discern without actually seeing the agreement, are not communications made to facilitate diagnosis or treatment. They are simply the terms agreed to by Plaintiff in exchange for receiving assistance from the EAP, and allegedly include a provision mandating drug testing. As such, they are not protected by the psychotherapist-patient privilege and again, Plaintiff was given the option of a stipulation to avoid any disclosure.

**Breach of Contract Claim**

Plaintiff argues the dismissal of his grievance violated his employment contract with the City, which entitled him to a fair hearing following termination. This claim, unlike the due-process claim, is not brought under Section 1983 and is merely a supplemental state-law claim. The Court therefore has discretion to exercise jurisdiction over the claim or to decline to do so. See Gold v. Local 7 United Food and Commercial Workers Union, ___ F.3d ___, 1998 U.S. App. LEXIS 27965 (10th Cir.) (exercise of supplemental jurisdiction is discretionary). Under 28 U.S.C. § 1367(c)(4), a federal court may decline to accept jurisdiction over a state-law claim if exceptional circumstances are

present justifying the court's action. One example of such a circumstance is the pendency of parallel state proceedings addressing identical claims. <u>Hays County Guardian v. Supple</u>, 969 F.2d 111, 125 (5th Cir. 1992). As noted above, that is exactly the situation in this case, at least as far as the breach-of-contract claim is concerned. Plaintiff has been provided a state-court avenue for challenging his termination, and has followed the required procedures. His state-court action is still pending. The breach-of-contract claim he is raising in this Court is nothing more than a claim that he was wrongly terminated in violation of the procedures set out in his employment contract with the City; a claim that can be maintained in the state-court proceedings and presumably has been raised there. Furthermore, the doctrine of exhaustion of administrative remedies would appear to require Plaintiff to challenge his termination through the available administrative process, including available appeals, rather than in a separate lawsuit in federal court. <u>Cf.</u> <u>Atencio</u>, 658 F.2d at 778 (civil rights action is not a plenary review of challenged state administrative procedure; proper mechanism for such review is that provided by state law).

Finally, it is clear to the Court that the instant lawsuit, if it had not been removed to this Court by the City, would have appropriately been consolidated with Plaintiff's other state-court case appealing the Personnel Board's decision. This would have allowed Plaintiff the one full and fair opportunity to litigate his breach-of-contract claims to which he was entitled. There is no good reason he should have a second opportunity to litigate the same claims simply because he filed this lawsuit containing federal claims and included the state-law breach-of-contract claim in the action. Taking into account the important considerations of judicial economy and fundamental fairness to the parties, the Court declines to exercise supplemental jurisdiction over Plaintiff's breach-of-contract claim.

**Conclusion**

Based on the foregoing, the Court will grant the City's motion for summary judgment on the procedural-due-process claim, deny Plaintiff's motion for same, and dismiss without prejudice Plaintiff's breach-of-contract claim.

## O R D E R

For the above stated reasons, Plaintiff's motion for summary judgment (Doc. 56) is DENIED, Defendants' motion for summary judgment (Doc. 61) is GRANTED, and Plaintiff's breach-of-contract claim is DISMISSED without prejudice.

Dated at Albuquerque this 8th day of December, 1998.

**BRUCE D. BLACK**
United States District Judge

Counsel for Plaintiff:
Paul Livingston
P.O. Box 90908
Albuquerque, New Mexico 87199

Counsel for Defendants:
Charles W. Kolberg
Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico 87103