FILED
UNITED STATES DISTRICT COURT
JAN 22 1999
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT LARA

    Plaintiff,

vs.    No. CV 95-366 BB/LCS - ACE

CITY OF ALBUQUERQUE,
LAWRENCE RAEL, Chief Administrative Officer,

    Defendants.

## AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, ROBERT LARA, presents the following findings of fact (including references to exhibits and testimony of witnesses) and conclusions of law for the trial scheduled to be held on February 1, 1999, on a trailing docket:

### PROPOSED FINDINGS OF FACT (ANNOTATED)

1. Robert Lara was a City employee since 1978; he had a good record up until April, 1992. The City employed Mr. Lara as a Line Maintenance Supervisor in the City's Public Works Department until his termination. (Ex. 34; Testimony of Robert Lara, Sam Walker, and Bill Otto).

2. On April 2, 1992, Robert Lara was ordered to work on exposing an illegal water installation that had been arranged by another City employee and that was being investigated by the City. (Exs. 3, 4, 5, and 8; Testimony of Robert Lara, Sam Walker, Bill Otto, Steve Baca, Bennie Garcia, Roy Robinson, Bob Padilla, Paul Rivera, and Hubert Anaya).

3. On April 3, 1992, Mr. Lara failed to report to work. Since his crew leader and crew also failed to report, all four employees were charged with insubordination and taking off without approval. (Same as Finding No. 2).

4. Due to stress resulting from his supervisory responsibilities and personal emotional problems, including grieving over the death of his mother, Mr. Lara voluntarily enrolled in the City's Employee Assistance Program at around the same time he faced the insubordination charges. (Exs. 3 and 4; Testimony of Robert Lara, Julia Bain, Jackie Montgomery; Joe Lara, Katie Wade).

5. A City of Albuquerque policy requires all employees enrolling in the Employee Assistance Program to "agree" to two years of suspicionless drug testing regardless of what problems they have or why they are enrolling in the EAP. (Testimony of Julia Bain, Jackie Montgomery, Gary Garlick, Marsha Hardeman).

6. The City's official drug testing policy, Administrative Instruction No. 123, included provision for employees to refer themselves to the EAP. (Exhibit attached to Ex. 28).

7. In Administrative Instruction No. 123, the City promised that upon voluntary participation and enrollment in the EAP "the EAP staff will follow appropriate regulations regarding confidentiality issues (and) (e)very effort will be made to avoid undue invasion of privacy." (Same as No. 6).

8. On April 28, 1992, Lara entered into a "settlement agreement" with the Public Works Department which made enrollment in the Employee Assistance Program for a program of therapy and rehabilitation a condition of his continued employment. At the time he signed the

compelled "agreement," Robert Lara was already enrolled in the EAP. (Ex. 12; Testimony of Robert Lara, Bill Otto, Bob Brown).

9. The City promised to protect Robert Lara's confidentiality. (Exhibits attached to Ex. 28; Testimony of Robert Lara, Julia Bain, Gary Garlick and Pat Bingham).

10. On May 31, 1992, Mr. Lara wrote to Julia Bain, the Director of the Employee Assistance Program to express his concern that he had signed an agreement to attend the Employee Assistance Program because "Bill Otto said it would be worse if I didn't" and didn't believe Lara when he said he "was already seeking help for family and job related problems through the EAP." (Ex. 15; Testimony of Robert Lara, Marsha Hardeman, and Julia Bain)

11. Also on May 31, 1992, Mr. Lara asked for a transfer because supervising 17 employees was too stressful and he was increasingly upset and concerned about supervising employees on a different shift than his. (Exs. 3, 4, 16, and 17; Testimony of Robert Lara and Sam Walker).

12. The City had not performed a formal performance evaluation of Mr. Lara for at least six years, even though such evaluations are required by the Merit System Ordinance. (Testimony of Robert Lara, Gary Garlick)

13. The City refused to transfer Mr. Lara to a different position. (Ex. 17; Testimony of Bill Otto and Sam Walker).

14. The City used its EAP, and his therapist and counselors to carry out the City's disciplinary and drug testing policies. (Exhibits attached to Ex. 28; Testimony of Gary Garlick, Julia Bain, Robert Lara and Marsha Hardeman).

15. The City did not, at any time, provide adequate or meaningful medical or psychological diagnosis, medication, therapy, or treatment to Robert Lara. (Testimony of Robert Lara, Joe Lara, Katie Wade, Tom Cook, Robin Walters, Dennis Abernathy, Julia Bain, Jackie Montgomery, Christine and Dr. Gelinas).

16. As a result of his enrollment in the EAP, Robert Lara was required to submit to numerous suspicionless drug tests. (Exs. 1 and 2; Testimony of Robert Lara, Julia Bain, Gary Garlick and Jackie Montgomery).

17. On December 22, 1993, Robert Lara had a positive drug test. At that time the Employee Assistance Program Coordinator required him to enter into a new treatment plan and a new two year agreement as a condition of his continued employment with the City. (Exs. 19, 20, and 21; Testimony of Robert Lara and Julia Bain).

18. On January 4, 1993, Robert Lara signed a new Agreement for Substance Abuse Testing (self-referral) "agreeing" to an additional two years of testing. The City required Robert Lara to sign the new "agreement" as a condition of his continued employment with the City. (Same as Finding No. 17).

19. The agreement, as amended, stated that "I understand that one more positive substance abuse test will result in my termination from City employment." (Ex. 20; Testimony of Robert Lara and Julia Bain).

20. On August 23, 1994, Julia Bain, the EAP coordinator and Robert Lara's therapist, reported "that Robert Lara was called on August 22, 1994 and asked to report to Employee Health Services on August 23, 1994." (Ex. 23; Testimony of Julia Bain and Robert Lara).

21. At that time, Ms. Bain told Mr. Lara on the telephone that not coming for the drug test "would mean non-compliance with the program and potential termination." (Testimony of Robert Lara and Julia Bain).

22. On August 26, 1994, Sam Cummins, Division Manager informed Robert Lara that he must attend a predisciplinary hearing on the charge of failing to report for a drug test as required by Julia Bain of the EAP. (Ex. 24; Testimony of Robert Lara, Sam Cummins, Roy Robinson, Gary Garlick, Bob Padilla, Bob Brown and Sam Walker).

23. On September 1, 1994, the City terminated Mr. Lara's employment because he failed to report for the drug test. (Exs. 23, 24, 25, and 26; Testimony same as Finding No. 22).

24. Mr. Lara did not have "one more positive drug test" as provided in the EAP "agreement." (Exs. 20, 23; Testimony of Julia Bain and Robert Lara).

25. The City failed to apply a policy of progressive discipline. (Testimony of Robert Lara, Sam Cummins, Bill Otto, Sam Walker, Gary Garlick and Bob Brown).

26. Defendants required Mr. Lara to submit to many suspicionless drug tests. Drug testing was the primary component of the City's "treatment" of Mr. Lara. (Exs. 3, 4; Testimony of Robert Lara, Julia Bain, Gary Garlick, Christine and Tom Cook).

27. The loss of his employment caused serious emotional and other damage to Robert Lara; instead of helping or assisting him, the City's Employee Assistance Program and his therapist caused and exacerbated severe depression and other emotional , psychological, social, and financial damage to Robert Lara. (Exs. 36, 37; Testimony of Robert Lara, Joe Lara, Katie Wade, Julia Bain, Christine, Dennis Abernathy, Robin Walters and Tom Cook).

28. In October, 1994, the U.S. district court declared Administrative Instruction No. 123 invalid and the City withdrew the drug testing policy. (Testimony of Bob Brown).

29. Under the City's civil service system (Merit System Ordinance), Lara requested a Personnel Board grievance hearing to appeal the City's decision to fire him. (Exs. 27 and 28; Court of Appeals decision of October 28, 1998; Testimony of Robert Lara and Pat Bingham).

30. A few days before the date of the hearing, the City attorney submitted a "motion to compel" Lara to sign a medical release form allowing the City to access his drug test results and certain agreements between Lara and the City and its Employee Assistance Program. The City's motion to compel also required Lara's consent for the City to speak with Julia Bain, his therapist. (Exs. 27 and 28; Court of Appeals decision).

31. Robert Lara contested the authority and jurisdiction of the Hearing Officer and Personnel Board to compel his consent to release confidential medical records. (Court of Appeals decision).

32. On October 28, 1994, the City"s contract hearing officer held a hearing in order to compel Plaintiff to sign the release and provide the required consent. (Exs. 27 and 28; Testimony of Patrick Bingham)

33. On December 1, 1994, the Hearing Officer signed a "Discovery Order" prepared by the Assistant City Attorney representing the Public Works Department providing that the case "will not proceed and back pay will not be recommended," until Mr. Lara agreed to sign the release of his records. (Exs. 27, 28; Testimony of Patrick Bingham).

34. The Hearing Officer ordered Lara to "cause [] the release" of:

   a. Laboratory reports reflecting substance abuse testing results,

   b. Any self referral agreements reflecting enrollment in the EAP,

   c. Any consent forms which Lara provided for drug/alcohol testing or the results of those tests, and

   d. Any other documents, other than counseling notes or treatment records, which reflect Lara's enrollment in a contractual relationship with the EAP concerning drug/alcohol testing and the release of drug/alcohol test results.

(Court of Appeals decision).

35. On December 16, 1994, the Hearing Officer held another hearing and told Lara that if he didn't sign the release of his medical records he would be denied a hearing. (Exs. 28 and 29))

36. Concluding that "willful disobedience of a Discovery Order is subject to sanction including dismissal of the action," the Hearing Officer recommended to the Personnel Board that it dismiss Mr. Lara's appeal of his termination without allowing a hearing." (Ex. 29; Court of Appeals decision; Testimony of Patrick Bingham).

37. At its meeting on February 7, 1995, the Personnel Board referred its decision to the Assistant City Attorney representing the Personnel Board to get his "legal opinion" regarding the question, "if the legal right to discovery takes precedence over the right to privacy." (Exs. 30, 31, 32; Testimony of Patrick Bingham).

38. After receiving the opinion of the Assistant City Attorney, at its meeting on March 2, 1995, the Personnel Board upheld the Hearing Officer's recommendation denying Lara's right

to have a grievance hearing on the grounds that he refused to sign a release. (Exs. 29 and 33; Testimony of Patrick Bingham; Court of Appeals decision).

39. Lara appealed the City Personnel Board's refusal to hold a hearing to the State district court, which upheld the Personnel Board's decision. (Court of Appeals decision).

40. Lara appealed the State district court's decision to the New Mexico Court of Appeals. The Court of Appeals issued its decision on October 28, 1998. (Court of Appeals decision).

41. The New Mexico Court of Appeals held that the Hearing Officer's Discovery Order "likely would have reached irrelevant, privileged, and confidential information and records." (Court of Appeals decision).

42. The New Mexico Court of Appeals held that the Personnel Board should have considered alternative measures to compel the discoverable information and should not have denied Lara a hearing in this case. (Court of Appeals decision).

43. At the time of his termination the City was paying Robert Lara $16.69 per hour and his bi-weekly salary was $1,335.20. (**New Ex. 38**).

## PROPOSED CONCLUSIONS OF LAW

1. Robert Lara has a constitutionally protected right to privacy and to be free from unreasonable and unwarranted governmental searches and seizures protected by the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

2. The City did not have a "special need" to require Robert Lara to submit to a course of suspicionless drug testing for two or more years.

3. Robert Lara's right to privacy overcame any "need" of the City of Albuquerque to require him to submit to frequent and repeated suspicionless drug testing.

4. The City did not have a "special need" to require Robert Lara to sign a release of his confidential and privileged EAP records.

5. Robert Lara's right to privacy overcame any "need" of the City to require the release of his confidential and privileged EAP records.

6. The City violated Robert Lara's right to privacy and right to be free of unreasonable, unwarranted searches by requiring him to submit to frequent, unnecessary, compelled suspicionless drug tests and by requiring him to sign a release of confidential and/or privileged records.

7. The City used its Employee Assistance Program and its therapist to carry out its disciplinary and drug testing policies and to inflict punishment on Robert Lara, rather than to provide him with the medical and psychological help he needed.

8. By requiring Robert Lara to submit to frequent suspicionless drug tests in order to secure help and assistance from the EAP and in order to keep his job as a supervisory employee, and by requiring him to sign a release of his EAP records in order to enjoy the right to a post-termination hearing, Defendants violated Lara's rights protected by the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

9. By refusing to allow a post-termination hearing in this case the Personnel Board and its Hearing Officer attempted to coerce Robert Lara to waive his right to maintain the privilege and confidentiality of his EAP records and unreasonably denied him a prompt and meaningful post-termination hearing.

10. Robert Lara has a constitutionally protected property interest in his employment and the City denied and deprived him of that interest without due process of law.

11. As a requirement of participation in the EAP pursuant to his voluntary enrollment the City required Robert Lara to sign a "last-chance" agreement which arbitrarily and unreasonably violated his right to due process of law in violation of the Fourteenth Amendment to the U.S. Constitution and Article II, Section 18 of the New Mexico Constitution.

12. By delaying a hearing on the merits of his termination and by refusing to hold a post-termination hearing for over four years the City violated Robert Lara's right to due process of law in violation of the Fourteenth Amendment to the U.S. Constitution and Article II, Section 18 of the New Mexico Constitution.

13. Defendants are liable to Robert Lara for damages resulting from their violations of his constitutionally protected right to privacy, right to be free of unreasonable and unwarranted searches, and right to due process of law.

14. By their perception and treatment of Robert Lara and their conduct, acts and omissions in this case Defendants violated the Americans with Disabilities Act.

15. Defendants are liable to Robert Lara for their violations of his constitutionally protected rights and interests and the damages sustained by Mr. Lara as a result of those violations.

Respectfully submitted,

_____
Paul Livingston
Attorney for Robert Lara
P.O. Box 90908
Albuquerque, NM 87199
(505) 823-4410

I hereby certify that I faxed a copy
of the foregoing amended proposed
findings of fact and conclusions of law to
Charles W. Kolberg, Assistant City
Attorney, on January 24, 1999.

_____
Paul Livingston