# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

---

**ROBERT LARA,**

      **Plaintiff,**

v.                                                                              No. CIV 95-366 BB

**CITY OF ALBUQUERQUE and
LAWRENCE RAEL, Chief
Administrative Officer,**

      **Defendants.**

## COURT'S FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

**THIS MATTER** came on for a trial to the Court without a jury on February 25 and 26, 1999, and all evidence having been presented, and the parties having submitted their respective proposed findings of fact and conclusions of law, the Court now makes the following findings of fact and conclusions of law:

### Findings of Fact

1.     Plaintiff, Robert Lara, was a City of Albuquerque ("City") employee since 1978. The City employed Mr. Lara as a Line Maintenance Supervisor in the City's Public Works Department. He had a good record up until April 1992.

2. **On April 2, 1992, Mr. Lara was ordered to work on exposing a water installation that was being investigated by the City. It was suspected the illegal connection had been made by another Public Works Department employee and neither Mr. Lara nor his crew wanted to be involved in the investigation. Mr. Lara was nonetheless directed to have his crew at the suspected site again on April 3.**

3. **On April 3, 1992, neither Mr. Lara nor his crew reported to work. Mr. Lara also did not call in sick. All the City employees on the crew and Plaintiff were charged with insubordination and failing to report to work without approval. Mr. Lara was suspended while the matter was investigated.**

4. **The day after he was suspended, Mr. Lara voluntarily enrolled in the City's Employee Assistance Program ("EAP"). He sought counseling for substance abuse and stress resulting from his supervisory responsibilities.**

5. **At the EAP Mr. Lara was given a "baseline" urinalysis and told there would be no consequences for a positive result. Indeed, the statement that "positive results will be released to the Department Director and the results will be considered by the City in determining my suitability for employment or continued employment" was crossed out on the EAP enrollment.**

6. **The City required Mr. Lara to enroll in the "two-year program" and agree to drug testing. No one explained to Mr. Lara that once he enrolled in the two-year program any non-compliance would be reported to his Department, that alternatively he could be referred to outside drug counseling or that he could merely receive counseling on substance abuse without enrolling in the two-year program.**

7. **On April 28, 1992, Mr. Lara entered into a "Settlement Agreement" with the Public Works Department which made enrollment with the EAP a condition of his continued employment. At the time he signed the "Settlement Agreement," Mr. Lara was already participating in the two-year drug treatment program with the EAP. However, in spite of having taken part in counseling sessions and a baseline urine test, at that time no paperwork existed to document Mr. Lara's participation in the two-year program.**

8. **The new Coordinator of the EAP, Julia Bain, saw Mr. Lara's requirement that he participate in the EAP and his prior positive urine test. Dr. Bain testified that at that time she assumed Mr. Lara had already been told the consequences and requirements of the two-year program by his counselor when he had voluntarily entered the two-year program earlier in April.**

3

**However, because Mr. Lara had been positive on the initial urine test and because he had been required to enter the Settlement Agreement, Dr. Bain testified if Mr. Lara had not signed the documents for the two-year program, she would have reported the results of his failed urine test to his Department.**

9. **Dr. Bain carefully explained the mandatory nature of the two-year program to Plaintiff. On April 28, 1992, Dr. Bain required Mr. Lara to execute the paperwork showing his entry into the two-year program. Thus, while Mr. Lara was required to participate in the EAP under the Settlement Agreement, his placement into the two-year program was caused in part by his previous positive urine test which was represented as having no consequences.**

10. **Approximately eighteen months later, Mr. Lara had a positive drug test on December 22, 1993. Because this test occurred during his initial two-year plan, the EAP Coordinator then required him to enter into a new two-year treatment plan as a condition of his continued employment with the City. On January 4, 1994, Mr. Lara signed a new Agreement for Substance Abuse Testing. The Agreement, as amended, stated that "I understand that**

one more positive substance abuse test will result in my termination from City employment." This was a "last chance" Agreement.

11. Following his January 1994 Agreement for Substance Abuse Testing, Mr. Lara was drug tested on at least eight occasions. On each of those occasions, he signed a consent form which stated he had the right to refuse the test but that refusal would result in termination. None of these tests were positive.

12. Dr. Bain called Mr. Lara on August 22, 1994, and asked him to report to Employee Health Services on August 23, 1994. At that time, Dr. Bain told Plaintiff that not coming for the drug test "would mean non-compliance with the program and potential termination." Since he did not believe he would pass it, Mr. Lara did not take the drug test.

13. On August 26, 1994, Sam Cummins, Division Manager, informed Mr. Lara that he must attend a predisciplinary hearing on the charge of failing to report for a drug test as required by Dr. Bain of the EAP.

14. On September 1, 1994, the City terminated Mr. Lara's employment on the basis that he had failed to report for the drug test.

15. The only evidence of damage introduced by Plaintiff was three pay stubs showing Mr. Lara's wage rate at a period when he was employed by the City.

**Conclusions of Law**

1. Robert Lara has a constitutionally protected right to privacy and to be free from unreasonable and unwarranted governmental searches and seizures protected by the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

2. Urinalysis is a search within the meaning of the Fourth Amendment. *Saavedra v. City of Albuquerque*, 73 F.3d 1525, 1531 (10th Cir. 1996); *Lucero v. Gunter*, 17 F.3d 1347, 1349 (10th Cir. 1994).

3. In order to be voluntary, consent must be unequivocally, freely and intelligently given. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir. 1977).

4. At the time Plaintiff "voluntarily" entered the two-year treatment program on April 4, 1992, he did not understand he was deemed to consent to repeated random drug testing. He was also explicitly told the baseline urine test would not have any consequences. The City used the baseline urine test

against Mr. Lara by requiring him to sign the documents for the two-year program. Dr. Bain testified that but for this earlier positive test, she would not have required Mr. Lara to enter the two-year program as part of the Settlement Agreement.

5. When Plaintiff signed the Settlement Agreement on April 28, 1992, Dr. Bain testified she would have reported the positive, baseline urine test to Plaintiff's Department if he had refused to sign the two-year program.

6. The City cannot induce the employee to give a baseline urinalysis by representing such a test would have no legal consequences and then use that test as the basis to require the employee to enroll in the two-year, mandatory, drug testing program. *See SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310 (5th Cir. 1981) (citizen should be able to rely on representations of government agent); *United States v. Bosse*, 898 F.2d 113 (9th Cir. 1990).

7. On April 28, Dr. Bain fully explained the consequences of entering the two-year program to Plaintiff, so he knowingly signed the consent, but it was no longer voluntary. Thus, the City could not rely on Plaintiff's earlier uninformed consent and had to have a special need for such testing.

*Chandler v. Miller*, 520 U.S. 305 (1997); *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068 (10th Cir. 1998).

8. Without relying on the baseline urine test, the City did not have a "special need" to require Mr. Lara to submit to a course of suspicionless drug testing for two years beginning in April 1992.

9. But for his enrolling in the two-year program on April 9, 1992, when the consequences were not explained, Mr. Lara would not likely have been tested and would not have produced the positive test in December 1992 that led to the last chance Agreement in January 1993.

10. On October 27, 1998, the New Mexico Court of Appeals filed an opinion in *Lara v. City of Albuquerque*, 971 P.2d 846 (N.M. App. 1998). In that opinion, the Court of Appeals held the City Personnel Board erred in dismissing Mr. Lara's grievance for failing to provide discovery ordered by the hearing officer.

11. Although the Court agrees *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), recognizes the right to damages for violation of the Fourth Amendment, Plaintiff has not provided sufficient facts for a

meaningful damage calculation (*e.g.*, employment history, lost wages, job skills, attempts to mitigate, etc.).

12. Since the City will now have to address the validity of Mr. Lara's termination, this Court will prohibit the City from introducing any evidence of the initial baseline urinalysis or subsequent actions taken in sole reliance on this urinalysis. *Murray v. United States*, 487 U.S. 533 (1988) (product of illegal search not admissible unless obtainable from independent source).

A Judgment consistent with these findings of fact and conclusions of law shall be drawn up by counsel for the Plaintiff and presented to the Court within twenty (20) days.

DATED at Albuquerque this 18th day of March, 1999.

										_____
										**BRUCE D. BLACK**
										**United States District Judge**

**Counsel for Plaintiff:**

    **Paul Livingston, Albuquerque, NM**

**Counsel for Defendants:**

    **Charles W. Kolberg, Assistant City Attorney, Albuquerque, NM**